84 So.2d 127

**Mabel PATTERSON**

v.

**WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY.**

**4 Div. 301.**

Court of Appeals of Alabama.

Oct. 11, 1955.

Rehearing Denied Oct. 25, 1955.

Allen Cook, Andalusia, for appellant.

Albrittons & Rankin, Andalusia, for appellee

HARWOOD, Presiding Judge.

Demurrers to her complaint having been sustained the plaintiff below took a nonsuit with a bill of exceptions and has perfected her appeal to this court.

The matter before this court is the sufficiency of the complaint as amended, said amended complaint containing only one count.

The complaint "claims of the defendant· the sum of $1000.00 due by a written policy whereby the defendant on October 1, 1941, by means of an accidental death benefit rider or written supplementary agreement made a part of said policy, insured the life of John J. Patterson who died on to-wit the 14th day of January 1954, his said death resulting in consequence of bodily injury effected solely through external violent and accidental means as a result of smoke inhalation by deceased on said date, namely January 14, 1954 of which defendant had notice."

The complaint further avers that all requirements of the policy have been complied with, and that she has complied with all of the provisions, except that she has not permitted or allowed or instructed the performance of an autopsy on the body of the deceased.

There are averred and attached to the complaint several letters, namely one from W. N. Wiggins, as agent for the plaintiff to the defendant, and the defendant's reply to this letter; a letter from plaintiff's attorney to the defendant, and defendant's answering letter.

The purpose of pleading these letters was to bring into operation the doctrines of

waiver, or estoppel, and thereby fasten defendant's liability.

We have not set forth the contents of these letters in that we think they are immaterial in that the doctrine of waiver, or of estoppel, cannot be invoked for reasons we will hereinafter set forth.

The material portions of the rider under which plaintiff claims are as follows:

"Hereby Agrees: That, subject to the conditions herein contained, the Society, in addition to the face amount payable under the certificate to which this supplementary contract is attached, will pay to the beneficiary or beneficiaries under said certificate the sum of *$1000.00* upon receipt and *approval of due proof that the death of the member Occurred in consequence of bodily injury effected solely through external, violent and accidental* means, of which, except in case of drowning or of injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the *body.*"

The defendant's demurrer, among other grounds, asserts the general proposition that the complaint states no cause of action; and, that aught that appears from the complaint, death of the insured did not occur in consequence of bodily injury affected solely through external violent means, of which, except in case of drowning or of injuries revealed by autopsy, there is a visible contusion or wound on the exterior of the body.

 In his judgment which the learned trial judge entered below, he states:

"The policy contract, the subject matter of the suit, according to Exhibit A attached to the complaint, contains an obligation on the part of the defendant to 'to pay to the beneficiary or beneficiaries under said certificate the sum of $1,000.00 upon receipt and approval of due proof that the death of the member (insured) occurred in consequence of bodily injury effected solely through external, violent and accidental means, of which, except in case of drowning or of injuries. *reveal* by an autopsy, there is a visible contusion

or wound on the exterior of the body, * * *.' The practical and legal effect of this provision, as we read it, is to obligate the defendant to pay the beneficiary the sum of $1,000.00 if the death of the insured is caused either (1) by accidental means manifested by visible contusion or wound on the exterior of the body; (2) by accidental drowning; (3) or by accidental means revealed by an autopsy. One of these conditions must exist and [be] shown by proof of death. The duty is on the plaintiff to submit due proof of the death of the insured, otherwise no suit can be maintained pending such submission. In view of this requirement, it follows that the autopsy must be performed at the instance of the plaintiff and not by the defendant. The policy provision authorizing the defendant to hold an autopsy does not conflict with or relieve the beneficiary of her contractual duty to show by proof that an autopsy, revealing death of the insured by accidental means, has been held. The complaint fails to aver that such proof has been submitted to the defendant."

We agree with the above conclusions. As stated in Krueger and Waggeoner, "The Life Insurance Policy Contract," at page 283:

"In addition to the coverage including death from accidental means evidenced by a visible wound or contusion on exterior of the body, two other types of risks are within the purview of most additional indemnity contracts, namely 'drowning' and 'internal injuries revealed by an autopsy.'"

It was also the view of the Fourth Circuit Court of Appeals, in Fidelity Mutual Life Insurance Co. v. Powell, 74 F.2d 525, 526, that the provisions we are now considering relate to coverage by the policy, as evidenced by the following language:

"It will be noted that the policy does not cover all cases of death from external, violent, and accidental means. With the exception of the cases embraced in the parenthesis (drowning or internal injuries revealed by autopsy),

it covers such cases only where there is injury 'of which there is a visible contusion or wound on the exterior of the body.' This is a not unusual provision in accident policies. * * *

"Since there was no evidence tending to show that the injury causing the death of insured, carbon monoxide asphyxiation, was evidenced by any visible contusion or wound on the exterior of the body, it is manifest that plaintiff cannot recover on the policy unless she can bring herself within the exception embodied in the parenthesis, i. e., unless she can show a case of drowning 'or of internal injuries revealed by an autopsy.' It is perfectly clear that she has shown neither. We can take judicial notice of the fact that carbon monoxide asphyxiation results in internal injuries, and that such internal injuries are revealable by autopsy; but in the case of this insured they were not 'revealed by an autopsy.' This is what is required, in language as plain as any of which our English speech is capable, to take the case out of the requirement of proof of a visible wound or contusion on the exterior of the body. The learned counsel for appellee in their supplemental brief have suggested that the language should be construed to mean 'disputed internal injuries revealed by autopsy'; but it would be necessary to interpolate even more than this and to construe the exception as though it read 'internal injuries which, if they are disputed, shall be revealed by an autopsy.' To give the language either of the suggested interpretations, however, would be to make a different contract for the parties in the light of what we think they ought to have meant, not to construe the perfectly clear language that they have used.

"It will not do to say that proof of internal injuries revealed by autopsy is dispensed with because of the admission on trial that death resulted from internal injuries. To do so is simply to read the words 'revealed by an autopsy' out of the policy; and we have no power to thus modify contracts which parties have made. There is sound reason for the requirement that internal injuries, to constitute ground of recovery, shall be revealed by autopsy. In case of injuries of which there is a visible wound or contusion on the exterior of the body, or in case of drowning, the cause of death is readily apparent; but in case of internal injuries it is largely a matter of opinion. As said in the Encyclopedia Brittanica (14th Ed.) vol. 2, p. 790: 'In the absence of autopsy a diagnosis of the cause of death is in large measure an opinion as distinguished from a fact. Even a physician of the highest skill often finds in the post mortem room that his diagnosis of the patient's disease during life needs rectification.' Such a requirement is a safeguard against fraud and mistake; and, where the parties have thus provided that the policy shall cover accidental death from internal injuries revealed only in this particular way, it does not cover death resulting from internal injuries not so revealed, no matter how indisputably established. The question is not merely one of proof, but of policy coverage; and the coverage is certainly not extended by an admission that death resulted from a cause which the policy did not cover."

The rider having set forth and limited the coverage of the policy, to accord to the contentions of appellant's counsel that new and additional rights arose out of the correspondence referred to in the complaint by waiver or estoppel, would in effect be to create a primary right.

■ It is well settled that coverage provided by an insurance policy cannot be extended, nor can primary rights be created, by waiver or estoppel. Home Insurance Co. of New York v. Campbell Motor Co., 227 Ala. 499, 150 So. 486; Hanover Fire Insurance Co. of New York v. Salter, 254 Ala. 500, 49 So.2d 193; Fidelity Phenix Fire Ins. Co. of New York v. Raper, 242 Ala. 440, 6 So.2d 513; Emergency Aid Ins. Co. v. Plummer, 35 Ala.App. 520, 49 So.2d 680.

It .follows therefore that proof of death furnished by appellant did not meet the terms of the proof of death required to be furnished by the rider under which appellant seeks to recover.

Counsel for appellant further argues that we should hold the autopsy clause of the rider void under the provisions of Section 27, Title 28, Code of Alabama 1940. This code section provides that no insurance company transacting business under the laws of this State shall issue a policy to a resident of this State which does not bear in bold letters a plain description of the policy and its character so that the owner may not be liable to mistake the scope of the contract.

This argument is succinctly answered in that portion of the opinion in the Fidelity Mutual Life Insurance Co. case, supra. We feel further comment is unwarranted.

Affirmed.